**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 6, 2023**

# In the Court of Appeals of Georgia

A23A0208. WILLIAMS v. SILVERS.

DOYLE, Presiding Judge.

Taleatha Williams ("the mother") appeals from the trial court's order granting Michael Silvers's ("the father") petition for modification of child custody and child support regarding the couple's three children and denying her motion for modification and contempt. Williams argues that the trial court (1) abused its discretion by granting the father's modification petition because it was contrary to the evidence and not in the best interests of the children; and (2) the trial court abused its discretion by denying and dismissing her contempt count alleged against the father in her first amended modification petition. For the reasons that follow, we affirm in part and vacate and remand in part.

This Court reviews for an abuse of discretion an order modifying or declining to modify child custody and child support, and evidentiary findings will be affirmed if there is any evidence to support them.[1] Additionally, a "trial court [has] wide discretion to determine whether court orders have been violated, and that determination is to stand on appeal in the absence of an abuse of discretion."[2]

Viewed in this light, the record shows that the consent final judgment and decree of divorce incorporating the parties' settlement agreement, parenting plan, and child support worksheet was entered on September 10, 2020 ("final agreement"). The parties had three children born in 2015, 2016, and 2018, and they shared joint legal and physical custody, rotating week-on/week-off custody beginning every Monday at 8:00 a.m. if there was no school. The mother had major decision-making authority for extracurricular activities, non-emergency healthcare, religious upbringing, and educational decisions.[3] Neither party was responsible for paying the other party any child support, and they were required to split the expenses accrued for the children

---

[1] See *Brazil v. Williams*, 359 Ga. App. 487, 490 (1) (b) (859 SE2d 490) (2021).

[2] *Blair v. Blair*, 272 Ga. 94, 96 (1) (527 SE2d 177) (2000).

[3] With regard to school, the agreement stated that the children would attend school in Gordon, Whitfield, or Murray Counties in Georgia, unless otherwise agreed to in writing by both of the parties.

equally. The mother was tasked with maintaining the children's current health care plan unless health insurance through one of the parties' places of employment became available.

On March 2, 2021, the mother filed a petition for modification of custody, contending that she lived in DeKalb County, Alabama, and the father lived in Gordon County, Georgia, at the time the final agreement was entered. She maintained that a material change in circumstances had occurred since entry of the final agreement, and it would be in the best interests of the children if she had sole physical custody.

The father responded and counter-petitioned for modification of custody, requesting that he be awarded primary physical and legal custody, that the mother be granted visitation, and that he be granted child support. On July 26, 2021, the mother amended her petition by adding a contempt claim against the father, alleging that he failed to give her right of first refusal, failed to allow her to contact the children by phone, failed to timely notify her about a move, and failed to pay certain monetary obligations under the settlement, including his half of the children's expenses and his portion of monthly payments toward debt accrued during the marriage.

The hearing did not occur until April 19, 2022, with the bulk of the evidence being the parties' testimony. The evidence showed that the mother had moved to

northern Alabama a few months before entry of the final agreement, but during that time, she exercised her parenting time at her grandmother's home in Murray County, Georgia. During the year following the divorce, the oldest child attended virtual school through Gordon County, where the parties had lived in the marital home, and the mother began exercising her visitation in Alabama, where she lived with her then-boyfriend, whom she later married. At some point, the father left the marital home and moved into his grandmother's house in Murray County, Georgia, where he lived until approximately December 2021, when he moved in with his new wife. The mother's home in Alabama was about two hours and fifteen minutes away from the father's current home in Murray County, Georgia — a grueling commute during the mother's school-year parenting weeks. The mother would drive the children to their current school during her custody weeks, and her grandmother would pick them up after school until their step-father could retrieve them in the afternoon for the trip back to Alabama.

During the father's custody weeks, the mother testified that he would not pick up her phone calls, and she would call others to try and get in touch with the children, either their paternal grandmother or their step-mother. The mother testified that the father refused to co-parent with her and was hostile about working out disputes; she

4

testified that they rarely spoke. The mother would attempt to call him, and he would tell her to text instead, and then he would ignore her text messages and not respond to her. The father stated that the mother either called while he was at work or too close to bedtime to speak to the children, and he contended that it was untenable to expect him to compromise on transportation when the mother moved so far from their previous marital home.

Pursuant to her authority over extra-curricular activities, the mother registered the children for gymnastics in Alabama, but the father refused to bring them on his parenting weeks. She attempted to arrange a visitation schedule swap with the father to facilitate the lessons, but he refused. Additionally, without her approval as final decision maker, he registered the children for softball and t-ball in Murray County, Georgia, and he told the mother that he would do as he liked. The father also refused to give one of the children her prescribed medication, stating that he thought it made her too sleepy, and he did not agree to her seeing certain physicians at an Alabama university.

Following the hearing, the trial court granted the father's counter-petition, denied the mother's petition for modification, and denied and dismissed the mother's contempt claim. The trial court did not make specific findings regarding the

testimony, simply indicating that the parties stipulated to a change in circumstance and finding that the best interests of the children were served by the father being the primary physical custodian. This appeal followed.

1. The mother first argues that the trial court abused its discretion by granting the father's petition for custody modification because the ruling was contrary to the evidence presented at the hearing and in the record, and the ruling was not in the best interests of the children. We disagree.

> In Georgia, there is a well established two-part test which the trial court must employ before instituting a change of custody. The trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether the child's best interests will be served by a change in custody. In other words, the best interests of the child should be utilized in deciding the case once a change in condition has been established. While a best interests of the child standard applies to an initial determination of custody, it is applicable in a change of custody action only after there has been a showing of a change in condition materially affecting the child.[4]

> In determining the best interests of the child, the judge may consider any relevant factor including, but not limited to: (A) The love,

---

[4] (Citations and punctuation omitted.) *Brazil*, 359 Ga. App. at 488-489 (1), quoting *Odum v. Russell*, 342 Ga. App. 390, 392 (1) (802 SE2d 829) (2017).

affection, bonding, and emotional ties existing between each parent and the child; (B) The love, affection, bonding, and emotional ties existing between the child and his or her siblings, half siblings, and stepsiblings and the residence of such other children; (C) The capacity and disposition of each parent to give the child love, affection, and guidance and to continue the education and rearing of the child; (D) Each parent's knowledge and familiarity of the child and the child's needs; (E) The capacity and disposition of each parent to provide the child with food, clothing, medical care, day-to-day needs, and other necessary basic care, with consideration made for the potential payment of child support by the other parent; (F) The home environment of each parent considering the promotion of nurturance and safety of the child rather than superficial or material factors; (G) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (H) The stability of the family unit of each of the parents and the presence or absence of each parent's support systems within the community to benefit the child; (I) The mental and physical health of each parent, except to the extent as provided in Code Section 30-4-5 and this paragraph and such factors as provided in Code Section 15-11-26; (J) Each parent's involvement, or lack thereof, in the child's educational, social, and extracurricular activities; (K) Each parent's employment schedule and the related flexibility or limitations, if any, of a parent to care for the child; (L) The home, school, and community record and history of the child, as well as any health or educational special needs of the child; (M) Each parent's past performance and relative abilities for future performance of parenting responsibilities; (N) The willingness

and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child; (O) Any recommendation by a court appointed custody evaluator or guardian ad litem; (P) Any evidence of family violence or sexual, mental, or physical child abuse or criminal history of either parent; and (Q) Any evidence of substance abuse by either parent.[5]

In this case, the parties stipulated to a material change in circumstance, and the trial court found that it was in the best interests of the children to give the father primary physical custody and the mother visitation. This decision is supported by the record. Living with the father, the children would continue to attend the school and daycare in which they were enrolled at that time and where they appeared to be doing well, and they would be close to their maternal and paternal extended families.[6] While the trial court would have been authorized under the facts in the record to award primary physical custody to the mother, it chose the opposite course. "[T]he task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes,

_____

[5] OCGA § 19-9-3 (a) (3).

[6] See id.

and assess their credibility. We do not second-guess the trial court in this regard when . . . there is any reasonable evidence to support the decision."[7]

We acknowledge the mother's concerns on appeal that the lapse in time between the filing of her petition in 2021 and its conclusion in 2022 resulted in the father's current location as being the status quo school location, as well as the troubling fact that the father admitted he violated the portions of the final agreement while simultaneously relying on other portions of the agreement to make demands on the mother, such as having her register the children for school in Georgia rather than doing so as the resident parent and failing to acquire Georgia health insurance for the children when the mother's Alabama health insurance would not apply to Georgia health services.[8] That said, under the standard of review, we cannot say that the trial court erred by granting the father's counter-petition.[9]

---

[7] (Citation and punctuation omitted.) *Brazil*, 359 Ga. App. at 490 (1) (b).

[8] We note that the father's counsel fixated on the mother's personal life choices. There was no testimony that these things were known to the children or involved or harmed them in any way. See *Stanley v. Edwards*, 363 Ga. App. 331, 339-341 (1) (c) (870 SE2d 911) (2022).

[9] See, e.g., *Alejandro v. Alejandro*, 282 Ga. 453, 454 (2) (651 SE2d 62) (2007) ("when . . . both parents [are] fit custodians, and [the trial court] assigns primary physical custody to one, this Court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. There was evidence

2. The mother next argues that the trial court abused its discretion by denying and dismissing the mother's count alleging contempt against the father.[10] We agree.

The trial court's only finding with regard to this issue was that the mother failed to establish that the father was in contempt of the order by a preponderance of the evidence. This finding is clearly an abuse of discretion, however, because (at the very least) the father admitted that he violated the final agreement during the hearing by registering the children for extracurricular activities without the mother's prior consent or even alerting her beforehand and also by failing to give one of the children her prescribed medication; this was done despite the mother having final decision-making authority in the areas of extra curricular activities and non-emergency healthcare. Accordingly, this portion of the order is vacated and remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part and vacated and remanded in part. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

supporting the court's decision, and it will not be disturbed on appeal.") (citation and punctuation omitted).

[10] The father's counsel alleged that he did not receive a copy of the mother's amended modification petition, which included the contempt count. The trial court noted that a certificate of service appeared in the record, and the father's counsel noted that he had had issues with the electronic filing system.